Filed 7/8/22  P. v. Henderson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CURTIS LEE HENDERSON, <br><br> Defendant and Appellant. | F083044 <br><br> (Super. Ct. No. CF91440923) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Smith, Acting P. J., Snauffer, J. and De Santos, J.

## **INTRODUCTION**

In 1992, appellant Curtis Lee Henderson was convicted by jury of first degree murder (Pen. Code,[1] § 187) with a robbery-murder special circumstance (§ 190.2, subd. (a)(17)) and robbery (§§ 211, 212.5, subd. (b)). In addition, the jury found true enhancement allegations for the personal use of a firearm (§ 12022.5, subd. (a)) and the infliction of great bodily injury (§ 12022.7). Following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), Henderson filed a section 1170.95 petition for resentencing. The superior court denied the petition without appointing counsel or requesting additional briefing. On appeal, Henderson contends the trial court erred in so doing. We affirm.

## **PROCEDURAL HISTORY**

On September 4, 1991, the Fresno County District Attorney filed an amended information charging Henderson with murder (§ 187, subd. (a), count 1) and robbery (§§ 211, 212.5, subd. (b), count 2). As to count 1, the information further alleged a robbery-murder special circumstance (§ 190.2, subd. (a)(17)); as to count 2, an enhancement for the intentional infliction of great bodily injury (§ 12022.7); and as to both counts, enhancements for the personal use of a firearm (§ 12022.5, subd. (a)), and an on bail enhancement (§ 12022.1).

A jury found Henderson guilty on all charges and found true the robbery special circumstance (§ 190.2, subd. (a)(17)); the personal use of a firearm allegations (§ 12022.5, subd. (a)); and the intentional infliction of great bodily injury allegation (§ 12022.7). Henderson admitted that he was released from custody on another felony charge when he committed the offenses (§ 12022.1).

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

The trial court sentenced Henderson to life without the possibility of parole plus seven years on count 1. The trial court imposed a determinate term of 14 years on count 2.

On January 25, 2021, Henderson filed a petition for resentencing pursuant to Senate Bill No. 1437, as codified in section 1170.95. The People filed an opposition to the petition.

On May 19, 2021, the trial court denied the petition, finding that Henderson failed to make a prima facie showing that he falls within the provision of section 1170.95.

Henderson filed a timely notice of appeal.

## STATEMENT OF FACTS

### *The Underlying Crime*

The following statement of facts can be found in this court's unpublished opinion in *People v. Henderson* (Sept. 1, 1993, F018029 [nonpub. opn.]):[2]

> "Around 2 a.m. on August 16, 1990, Henderson and [Ronnie] Payne, accompanied by Kevin Lewis, robbed the Exxon gas station at McKinley and West in Fresno. During the course of the robbery, Henderson shot Tommy Walker, the clerk, in the head. Henderson and Payne made off with $36. Walker had arrived at work about 10:00 the night before. He had walked to the station and did not appear to be injured in any way at the time.

> "Walker was discovered about an hour after the robbery. A heavy cash register was lying across his lower legs. Normally, the cash register was located on a shelf, about three feet above the spot where it was found. By the time ambulance personnel arrived, Walker was conscious and oriented, although he could not remember what had happened. Paramedics did not realize he had been shot in the head.

---

[2] We have omitted a substantial portion of this court's statement of facts as they are not directly relevant to the issues pending in this appeal. We acknowledge Henderson's argument on appeal that the trial court erred by taking judicial notice of this court's prior opinion. However, we take judicial notice of the opinion on our own motion to provide context to the trial court's ruling on Henderson's petition and the parties' contentions on appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

"Walker was taken to Fresno Community Hospital. At admission, Walker had a gunshot wound to the head and trauma to the right ankle. Neurosurgeon Brian Clague performed a craniotomy. Walker had a bullet entry wound between the eyes and slightly higher than the brow line. The bone was shattered; pieces of it were forced back into the brain tissue, some as much as two inches on the right side. Clague removed a bullet and bone fragments from Walker's brain. The bullet had penetrated about two inches into the frontal lobe. Clague then reconstructed the dura mater (lining of the brain) and the skull.

"The surgery and postoperative period went well, and Walker was transferred from the intensive care unit to a regular room on August 17. From the time he was brought into the hospital, he complained of pain in his right ankle. The ankle was x-rayed on August 19. While there was no fracture, there was swelling consistent with a minor ankle sprain.

"While healing of the head wound was underway, swelling and pain persisted in the ankle. On August 27, Walker was diagnosed as having deep vein thrombosis in his right leg. That evening, he suffered a massive pulmonary embolism and died."

According to the record of conviction, Payne was acquitted of murder but convicted of robbery. A section 12022, subdivision (a)(1) allegation was found to be true based upon the fact that Payne was armed with a firearm.[3]

### The Trial Court's Ruling on Henderson's Section 1170.95 Petition

On May 19, 2021, the trial court denied the petition, explaining:

"The Court is in receipt of a Petition for Resentencing filed March 2, 2020. Based on review of the record of conviction in this case, the petition is denied with prejudice. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, review granted Mar. 18, 2020, 8260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1138, review granted Mar. 18, 2020, 8260598.)

"Petitioner Curtis Lee Henderson has failed to make a prima facie showing that he falls within the provisions of Penal Code section 1170.95. The jury found that Petitioner personally used a firearm and intentionally inflicted great bodily injury during the commission of the robbery. (Pen. Code, §§ 12022.5(a), 12022.7.) Petitioner did not challenge these findings on appeal. There was sufficient evidence at trial for the jury to find true the section 12022.7

---

[3] The information does not show that Kevin Lewis was charged with Henderson and Payne.

4.

enhancement that, at the time, required specific intent that Petitioner personally and intentionally inflicted great bodily harm.

"On appeal Petitioner challenged the instructions related to proximate causation and foreseeability. The appellate court rejected the arguments and found no error. (See *People v. Henderson* (Sept. 1, 1993, F018029 pages 35 & 38) [nonpub. opn.].) 'The alleged negligence of Walker's physicians did not consist of active conduct but instead was composed entirely of omissions. As a result, the evidence before the jury was insufficient as a matter of law to support a finding that Walker's death was the result of an independent superseding cause.' (*People v. Henderson, supra*, at [p.] 38.) 'We have already determined the evidence was inadequate as a matter of law to support to conclusion by the trier of fact that the alleged negligence of the treating physicians absolved Henderson of criminal responsibility to Walker's death.' (*People v. Henderson, supra*, at p. 39.)

"The condition set out at Penal Code § 1170.95(a)(3) does not apply. Petitioner could be convicted of murder based on the facts in this case despite changes to Penal Code sections 188 or 189 made effective January 1, 2019. A review of the record shows Petitioner was more than a mere participant in the crime. Petitioner was the actual killer. He was a major participant in the underlying felony and acted with reckless indifference to human life. Petitioner is not eligible for resentencing. For all of the above reasons, the petition is denied with prejudice.

"The Court further notes that there are procedural defects with the petition. The caption of the petition is incorrect; the declaration is incomplete; and Petitioner has failed to comply with the procedural service requirements. There is no indication that this petition was served on the attorney who represented Petitioner in the trial court or on the public defender of the county where Petitioner was convicted."

## DISCUSSION

Henderson contends the trial court erred by denying his petition for resentencing under section 1170.95 in several respects. First, by failing to appoint counsel and giving him an opportunity to be heard before his petition was denied. Second, by engaging in factfinding at the prima facie stage. And, finally, Henderson contends the trial court erred by concluding that he is ineligible for resentencing relief as a matter of law. We conclude Henderson has failed to demonstrate prejudicial error.

5.

## I.    Background:  Senate Bill No. 1437

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine ... to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  Senate Bill No. 1437 accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.)  Second, to amend the felony murder rule, the bill added section 189, subdivision (e), which provides the following:

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, Senate Bill No. 1437 added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra,* 10 Cal.5th at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter."  (§ 1170.95, subd. (a).)

To seek relief under section 1170.95, a petitioner must file a petition in the superior court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony

6.

murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)-(3); see also § 1170.95, subd. (b)(1)(A).) Additionally, the petition must indicate "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to comply with these requirements, "the court may deny the petition without prejudice to the filing of another petition." (§ 1170.95., subd. (b)(2).) Where the petition complies with subdivision (b)'s requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made "a prima facie showing" for relief. (§ 1170.95, subd. (c).)

## II. The Trial Court's Failure to Appoint Counsel/Henderson's Opportunity to be Heard

In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), our Supreme Court held that "the statutory language and legislative intent of section 1170.95 make clear that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that only after the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id.* at p. 957.)

Here, the trial court observed that Henderson's petition was defective in several respects: "The caption of the petition is incorrect; the declaration is incomplete; and Petitioner has failed to comply with the procedural service requirements. There is no indication that this petition was served on the attorney who represented Petitioner in the trial court or on the public defender of the county where Petitioner was convicted." We presume however that because Henderson's petition was denied on the merits of his claims rather than "without prejudice to the filing of another petition," the information

missing from Henderson's petition was readily ascertainable by the court and that his petition was otherwise sufficient. (See § 1170.95, subd. (b)(2).) Consequently, the court should have appointed counsel and permitted an opportunity for further briefing by the parties. (See *Lewis*, 11 Cal.5th at pp. 961-963, 967.) The court therefore erred in denying Henderson's petition without following these procedures.

## III.     Factfinding at the Prima Facie Stage

Next, Henderson contends the trial court engaged in improper factfinding at the prima facie review. The trial court may not engage in factfinding involving the weighing of the evidence at the prima facie stage. (*Lewis, supra*, 11 Cal.5th at p. 972.) "[T]he time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues. Thus, absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts and had the requisite intent, the trial court should not question his evidence." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

The court may, however, consider the record of conviction in "determining whether [a] petitioner is entitled to relief." (*People v. Simmons* (2021)   , review granted Sept. 1, 2021, S270048 (*Simmons*).) If the record of conviction contains facts refuting the allegations asserted in the petition, the trial court will be justified in denying the petition at the prima facie review stage. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 953 (*Farfan*).)

Here, the trial court concluded Henderson was ineligible for resentencing, explaining:

> "Petitioner Curtis Lee Henderson has failed to make a prima facie showing that he falls within the provisions of Penal Code section 1170.95. The jury found that Petitioner personally used a firearm and intentionally inflicted great bodily injury during the commission of the robbery. (Pen. Code, §§ 12022.5(a), 12022.7.) Petitioner did not challenge these findings on appeal. There was sufficient evidence at trial for the jury to find true the section 12022.7 enhancement that, at the time, required specific intent that Petitioner personally and intentionally inflicted great bodily harm. [¶…¶]

8.

"The condition set out at Penal Code, § 1170.95(a)(3) does not apply. Petitioner could be convicted of murder based on the facts in this case despite changes to Penal Code sections 188 or 189 made effective January 1, 2019. A review of the record shows Petitioner was more than a mere participant in the crime. Petitioner was the actual killer. He was a major participant in the underlying felony and acted with reckless indifference to human life. Petitioner is not eligible for resentencing. For all of the above reasons, the petition is denied with prejudice."

Assuming the trial court engaged in improper factfinding in reaching these conclusions, we conclude Henderson has failed to show prejudice for the reasons discussed below.

## IV.    Henderson Has Failed to Show Prejudice; He is Ineligible for Resentencing Relief as a Matter of Law

Because the trial court erred in failing to appoint counsel and providing an opportunity for further briefing, and assuming it further erred by engaging in premature factfinding, we may affirm only if Henderson was not prejudiced by the error. (*Lewis, supra*, 11 Cal.5th at pp. 972-974.) Under *People v. Watson* (1956) 46 Cal.2d 818, the petitioner must " 'demonstrate there is a reasonable probability that in the absence of the error he ... would have obtained a more favorable result.' " (*Lewis,* at p. 974.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Ibid.*, citing *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.)

### 1.  Actual Killer

In *People v. Jones* (2003) 30 Cal.4th 1084, our Supreme Court held that a finding that a defendant personally used a firearm (§ 12022.5), in and of itself, does not in itself prove a defendant is the actual killer. (*Jones,* at p. 1120.) The court explained that personal use does not automatically show the defendant is the actual killer because a gun could be used even if it is never fired. The court gave the following example: "If two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony

9.

murder, even though only one is the actual killer." (*Ibid*.) However, when the record shows only one person displayed and used a gun and "[a]ll evidence points to defendant, not the second robber, as the one with the gun," the true finding on a personal use enhancement demonstrates that the defendant was the actual killer. (*Ibid*.)

In *People v. Young* (2005) 34 Cal.4th 1149, our Supreme Court reaffirmed that a finding of personal use standing alone does not demonstrate a defendant was the actual killer. (*Id*. at p. 1205.) Where, however, there was "no evidence that anyone else who may have been present at the ... residence displayed in a menacing manner, or otherwise used, a gun," "all evidence points to defendant as the one who actually shot and killed [the victim]." (*Ibid*.)

In *People v. Garrison* (2021) 73 Cal.App.5th 735, the Second Appellate District, Division One, held that where the petitioner admitted he was the only one armed with a handgun during the commission of a robbery, and the uncontroverted evidence showed that gun was used to shoot the victim, the evidence demonstrated that he was the actual killer. (*Id*. at pp. 743, 747.)

Here, according to Henderson's record of conviction, both Payne and Henderson were armed with firearms during the robbery. However, while Payne was convicted of robbery with a section 12022, subdivision (a)(1) enhancement for being armed with a firearm, only Henderson was convicted of murder (§ 187) with an enhancement for the personal use of a firearm during the commission of the offense (§ 12022.5, subd. (a).) The jury's findings therefore suggest that Henderson was the actual killer. Nonetheless, to the extent Henderson argues the trial court engaged in factfinding to definitely conclude that he was in fact the actual killer, we find no prejudice. As discussed further below, the jury's true finding on the robbery-murder special circumstance renders him ineligible for resentencing relief as a matter of law.[4]

---

[4] Henderson further contends there are proximate cause and foreseeability issues related to Walker's cause of death, given the fact that Walker ultimately died of a pulmonary embolism, which he contends was caused when Payne dropped a cash register on Walker's leg, causing deep vein thrombosis. We need not address his assertions in light of the jury's special circumstance finding.

10.

## 2. Special Circumstance Finding

Relief under section 1170.95 is available only if the petitioner makes a prima facie showing that he or she "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill No. 1437. (§ 1170.95, subd. (a)(3); *Farfan*, *supra*, 71 Cal.App.5th at p. 954.) In finding the special circumstance (§ 190.2, subd. (a)(17)) true, the jury necessarily found that Henderson was either (1) the actual killer; (2) an aider and abettor who harbored an intent to kill or (3) a major participant in the robbery that acted with reckless indifference to human life. (See CALJIC 8.80.1 [Post June 5, 1990 Special Circumstances]; §§ 189, subd. (e)(3), 1170.95, subd. (a).) Any one of these findings preclude Henderson from section 1170.95 resentencing relief as a matter of law. (*Farfan,* at p. 954.)

We acknowledge there is a split of authority among appellate courts regarding whether a special circumstance finding precludes section 1170.95 resentencing relief as a matter of law. Some courts have concluded that a petitioner with a special circumstance finding that occurred prior to our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) may have been convicted based on "conduct that is not prohibited by section 190.2 as currently understood." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011, overruled on another ground by *Lewis*, *supra*, 11 Cal.5th at p. 963; accord, *People v. Harris* (2021) 60 Cal.App.5th 939, 958, review granted April 28, 2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835.) And, if the jury's finding on a felony-murder special-circumstance is legally insufficient under *Banks* and *Clark*, such a finding cannot "conclusively refute a prima facie showing of entitlement to resentencing relief." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 256, review granted Jun. 30, 2021, S268862.) Thus, in considering whether a petitioner is entitled to relief pursuant to section 1170.95, the sentencing court must first determine whether "the evidence presented at trial was sufficient to support the

11.

felony-murder special-circumstance finding under *Banks and Clark*." (*Secrease*, at p. 264.)

A contrary line of authority has emerged rejecting this contention and concluding that a special circumstance finding bars section 1170.95 resentencing relief as a matter of law. (See *People v. Nunez* (2020) 57 Cal.App.5th 78, 92, review granted Jan. 13, 2021, S265918; *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 458; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284; *People v. Gomez* (2020) 52 Cal.App.5th 1, 13-14, review granted Oct. 14, 2020, S264033.)

"Courts which have held that a pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief have reasoned that *Banks* and *Clark* merely clarified the law as it always was." (*Simmons*, *supra*, 65 Cal.App.5th at p. 747, review granted Sept. 1, 2021, S270048.) *Banks* and *Clark* merely relied upon decisions by the United States Supreme Court to clarify principles that have long been in existence. (*Simmons*, at p. 749, citing *Enmund v. Florida* (1982) 458 U.S. 782 & *Tison v. Arizona* (1987) 481 U.S. 137.)

Consistent with this court's opinion in *Simmons*, we conclude that a special circumstance finding precludes resentencing relief under section 1170.95 as a matter of law. By finding true the special circumstance allegation, the jury made the requisite findings necessary to support Henderson's murder conviction under the law as amended by Senate Bill No. 1437. Because the record affirmatively establishes that Henderson is ineligible for resentencing under section 1170.95 as a matter of law, the superior court's denial of his petition without accepting further briefing or proceeding to an evidentiary hearing was harmless error. Henderson has failed to demonstrate " 'a reasonable probability that in the absence of the error he ... would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974, quoting *People v. Lightsey* (2012) 54 Cal.4th 668, 699.)

12.

Henderson contends there are several problems with concluding that a special circumstance finding establishes that a petitioner is ineligible for resentencing relief as a matter of law. His arguments fail to persuade us to depart from our holding in *Simmons*. The issue is currently pending review in our Supreme Court so we will soon have clarity one way or the other. (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606 ["This case presents the following issue: Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"].) In the interim, given the vigorous debate and detailed analysis that has already been dedicated to this issue, we do not address Henderson's contentions. Pursuant to our holding in *Simmons*, we conclude the special circumstance finding here precludes Henderson from section 1170.95 resentencing relief as a matter of law.[5]

## DISPOSITION

The trial court's order denying Henderson's section 1170.95 petition for resentencing is affirmed.

---

[5] In light of our conclusion that Henderson is ineligible for relief under section 1170.95, as a matter of law, we further conclude that to the extent the court erred in ruling on his petition without affording him the opportunity to file a reply to the People's response, the error was harmless under either the standard set forth in *People v. Watson, supra,* 46 Cal.2d at p. 836 (no reasonable probability of more favorable outcome) or the more stringent test under *Chapman v. California* (1967) 386 U.S. 18, 24 (harmless beyond a reasonable doubt).